IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Jeff Yelton, | ) | |
| | ) | C.A. No. 6:13-1081-HMH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| ScanSource, Inc. & ScanSource | ) | |
| Nonqualified Deferred Compensation Plan, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Plantiff Jeff Yelton's ("Yelton") motion to strike portions of the administrative record, to supplement the administrative record, and for discovery. Yelton also moves the court to reconsider its September 9, 2013 Order granting in part Yelton's motion to stay the briefing deadline. Further, Yelton moves to strike docket numbers 36-2 and 38-2, and for leave to submit documents in camera. Finally, Defendants ScanSource, Inc. and ScanSource Nonqualified Deferred Compensation Plan (collectively "ScanSource") move the court to supplement the administrative record. After thorough review and for the reasons set forth below, the court denies Yelton's motion to strike portions of the administrative record, grants in part and denies in part Yelton's motion to supplement the administrative record, grants in part Yelton's motion for discovery, denies Yelton's motion for reconsideration as moot, denies Yelton's motion to strike docket numbers 36-2 and 38-2, and grants ScanSource's motion to supplement the administrative record

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises under the Employee Retirement Income Security Act of 1974, 29

U.S.C. §§ 1001, et seq. ("ERISA").  Yelton filed a complaint in this court on April 22, 2013,

alleging that ScanSource owed him ERISA benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and

attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).  Pursuant to the court's Specialized

Case Management Order, the parties filed a joint stipulation on August 19, 2013.  (Joint

Stipulation, ECF No. 12.)  On August 23, 2013, counsel for ScanSource notified the court that it

was "working with Plaintiff's counsel to resolve a dispute about the Administrative Record"

because "[a]fter filing documents with [an] Amended Joint Stipulation on Tuesday, August 20,

2013, [ScanSource's counsel] realized that [they] had misunderstood what the Parties intended

to be the Administrative Record."  (Aug. 23, 2013 Letter, ECF No. 15.)  On August 30, 2013,

the clerk struck the submitted administrative record for noncompliance.  (ECF No. 19.)  On

September 3, 2013, an amended joint stipulation was filed.  (Am. Joint Stipulation, ECF No.

21.)  Finally, on September 5, 2013, a second amended joint stipulation was filed with stipulated

and disputed portions of the administrative record attached.  (Second Am. Joint Stipulation, ECF

No. 23.)  The same day, Yelton filed a motion to stay the briefing deadline and requested a

status conference.  (Pl. Mot. Stay, ECF No. 22.)  ScanSource consented to a fourteen-day

extension, (Defs. Resp. Supp. Mot. Stay, ECF No. 25), and the court granted Yelton's motion in

part on September 9, 2013, by extending the briefing deadline fourteen days.  (Sept. 9 Text

Order, ECF No. 26.)

     On September 9, 2013, Yelton filed a motion to strike disputed portions of the

administrative record, to supplement the record with attached exhibits, and to conduct discovery.

(Pl. Mot. Strike, generally, ECF No. 27.)  Yelton also filed a motion for reconsideration of the

court's September 9 Order extending the briefing deadline by fourteen days.  (Pl. Mot.

Reconsider, ECF No. 28.)  ScanSource responded to Yelton's motion to strike on September 26,

2013.  (Defs. Resp. Opp'n Pl. Mot. Strike, ECF No. 38.)  Yelton submitted his reply on

October 7, 2013.  (Pl. Reply Resp. Opp'n Mot. Strike, ECF No. 48.)  On September 26, 2013,

ScanSource responded to Yelton's motion for reconsideration.  (Defs. Resp. Opp'n Mot.

Reconsider, ECF No. 39.)  Yelton did not reply to ScanSource's response.

On September 23, 2013, pursuant to the court's extended briefing deadline, Yelton and

ScanSource submitted memoranda in support of judgment.  (Defs. Mem. Supp. J., ECF No. 36.);

(Pl. Mem. Supp. J., ECF No. 37.)  On September 30, 2013, Yelton and ScanSource filed their

replies.  (Pl. Reply Defs. Mem. Supp. J., ECF No. 43.); (Defs. Reply Pl. Mem. Supp. J., ECF

No. 44.)  Yelton filed a motion to strike docket numbers 36-2 and 38-2, which are exhibits

attached to ScanSource's memorandum in support of judgment and ScanSource's response to

Yelton's motion to strike portions of the administrative record.  (Pl. Mot. Strike Docket Entries,

ECF No. 42.); (Defs. Mem. Supp. J. Ex. B (July 15, 2013 Letter), ECF No. 36-2.); (Defs. Resp.

Opp'n Pl. Mot. Strike Ex. B (July 15, 2013 Letter), ECF No. 38-2.)  On October 3, 2013, Yelton

filed a motion for leave to submit documents in camera.  (Pl. Mot. Leave Submit Docs., ECF

No. 45.)  On October 21, 2013, ScanSource consented to the motion.  (Defs. Resp. Pl. Mot.

Leave Submit Docs., ECF No. 51.)  Finally, ScanSource filed a motion to supplement the

administrative record on October 22, 2013, and Yelton filed his response on the same day.

(Defs. Mot. Suppl. Admin. R., ECF No. 52.); (Pl. Resp. Defs. Mot. Suppl. Admin. R., ECF No.

53.)  ScanSource submitted its reply on October 24, 2013.  (Defs. Reply Mot. Suppl. Admin. R.,

ECF No. 54.)  These matters are now ripe for review.[1]

## II. DISCUSSION OF THE LAW

### A. Yelton's Motion to Strike Disputed Portions of the Administrative Record

Yelton moves to strike the following disputed portions of the administrative record:

1) a letter from ScanSource in-house counsel to the plan administrative committee following

Yelton's October appeal, (Second Am. Joint Stip. Ex. 41 (Nov. 28, 2012 Memorandum), ECF

No. 23-46.); 2) indexes of documents submitted by ScanSource and Yelton, (Id. Ex. 42

(Indexes), ECF No. 23-47.); 3) ScanSource's Responses to Interrogatories in parallel state

litigation, (Id. Ex. 43 (Defs. Second Suppl. Ans. Pls. First Interrogs.), ECF No. 23-48.); 4) a

PowerPoint presentation prepared by ScanSource's counsel of record and used in the parallel

state litigation, (Id. Ex. 44a (PowerPoint Presentation Slides), ECF No. 23-49.); (Id. Ex. 44b

(PowerPoint Presentation Slides), ECF No. 23-50.); (Id. Ex. 44c (PowerPoint Presentation

Slides), ECF No. 23-51.); (Id. Ex. 44d (PowerPoint Presentation Slides), ECF No. 23-52.); 5) a

letter from ScanSource's counsel of record to the special referee in the parallel state litigation,

(Id. Ex. 45 (Sept. 17, 2012 Letter), ECF No. 23-53.); 6) ScanSource's reply to Yelton's

memorandum in opposition to a motion for a preliminary injunction in the parallel state

litigation, (Id. Ex. 46 (Reply Pls. Mem. Opp'n Prelim. Inj.), ECF No. 23-54.); 7) a preliminary

injunction issued in the parallel state litigation, (Id. Ex. 47 (Oct. 26, 2012 Order), ECF No. 23-

55.); and 8) search provider queries from Yelton's laptop, (Id. Ex. 48 (Search Provider Queries),

---

[1]Pursuant to Local Rule of Civil Procedure 7.08, the district court may determine motions without a hearing.  A hearing is unnecessary because the issues presented have been adequately briefed by the party.

ECF No. 23-56.).  Yelton argues generally that the disputed documents should be struck because ScanSource "never identified the documents in the disputed portion of the administrative record [to Yelton] during the [administrative] process."  (Pl. Mem. Supp. Mot. Strike 20, ECF No. 27-1.)  Yelton points specifically to ScanSource's failure to notify him of the existence of the letter from ScanSource in-house counsel to the plan administrative committee.  (Id. 4-5, 8, ECF No. 27-1.)  Further, Yelton vaguely argues or implies that the disputed portions of the record should be struck because ScanSource falsely represented in the initial joint stipulation that Yelton agreed that the disputed documents were part of the administrative record.  ScanSource argues generally there is "no basis" to strike the materials.  (Defs. Opp'n Pl. Mot. Strike, ECF No. 38.) The court agrees.

In the Fourth Circuit, the administrative record consists of "the facts known to [the administrator] at the time" it rendered its decision.  Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994).  Yelton has not shown that these materials were not before the plan administrator at the time of the decision.  Yelton argues that the plan administrator violated a fiduciary duty during the review process.  However, this argument is distinct from the issue of whether the materials were before the plan administrator when it made its decision.  The cases Yelton cites in support of his argument are distinguishable from the case at bar.  Yelton cites Vega v. National Life Insurance Services, Inc., 188 F.3d 287, 299 (5th Cir. 1999) (en banc), overruled in part by Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008), in support of his argument that ScanSource had an "absolute obligation as fiduciaries under ERISA to make known such documents."  (Pl. Mem. Supp. Mot. Strike 20, ECF No. 27-1.)  Yelton also cites Robinson v. Aetna Life Insurance Co., 443 F.3d 389, 393-94 (5th Cir. 2006), arguing that

5

"[i]nformation not disclosed in violation of ERISA's full and fair review requirements should not be relied upon by a reviewing district court" and that "it would be error to consider . . . materials outside the administrative record that were not identified to the claimant."[2]  (Pl. Mem. Supp. Mot. Strike 20-21, ECF No. 27-1.)  In Vega, the Fifth Circuit evaluated whether the court may consider documents that were not before the plan administrator, not whether courts must exclude documents that were before the plan administrator that were not known to the claimant during the administrative process.  See Vega, 188 F.3d at 299.  Further, in Robinson, the Fifth Circuit addressed the merits of a procedural challenge to the denial of benefits, not whether certain information was part of the administrative record.  See Robinson, 443 F.3d at 393-94.  Additionally, the Fifth Circuit explained that the district court should not have relied on evidence that was not before the plan administrator, not that the court should have excluded from the administrative record documents the existence of which the claimant was unaware.  See id.  Yelton has not shown a basis to strike the disputed documents on the ground that he was unaware of their existence during the administrative proceeding, and the motion to strike on this basis is denied.

Yelton's argument that the disputed documents should be struck because ScanSource's counsel falsely represented that he stipulated to their inclusion in the administrative record is without merit.  Yelton cites no case law in support of his position.  Further, Yelton has not shown that the misrepresentation was intentional or that he suffered any prejudice as a result.

--------

[2]Yelton's second proposition is not entirely clear.  Yelton argues, "Likewise, it would be error to consider information the plan administrator to rely on materials outside the administrative record that were not identified to the claimant."  (Pl. Mem. Supp. Mot. Strike 21, ECF No. 27-1.)

ScanSource notified the court of pending changes to the administrative record and the confusion between the parties as to which documents were stipulated to being in the record. See (Aug. 23, 2013 Letter, ECF No. 15.). Moreover, Yelton had the opportunity to file his motion to strike the disputed portions, which the court is currently resolving. As a result, the motion to strike the disputed documents on the ground that opposing counsel misrepresented Yelton's stipulation to their inclusion is denied.

Yelton offers additional arguments in support of striking specific disputed documents. Because the grounds vary for each document, those arguments are addressed individually below.

### 1. The Indexes of Documents Submitted by ScanSource and Yelton

Yelton moves to strike all disputed documents, and the indexes are included in the disputed documents. See (Pl. Mot. Strike, generally, ECF No. 27.). The indexes are lists generated by ScanSource that identify documents that were submitted to the committee by Yelton and by ScanSource in support of their positions. See (Second Am. Joint Stip. Ex. 42, Disp. R. 6-9 (Indexes of Documents), ECF No. 23-47.). Yelton has not asserted any argument as to why the indexes should be struck and has not shown that they were not before the plan administrative committee. Therefore, the motion to strike the indexes is denied.

### 2. ScanSource's Responses to Interrogatories

Yelton moves to strike ScanSource's responses to interrogatories in the parallel state litigation. Yelton argues that the responses to the interrogatories should be struck because they are "unsworn and unverified" and thus are not admissible evidence. (Pl. Mot. Strike 8, ECF No. 27-1.) Yelton also argues that the committee never cites the interrogatories as having been relied upon in its decision. (Id.) ScanSource does not address the interrogatories specifically.

7

ScanSource generally asserts that the disputed documents contain evidence and were provided to the plan committee. (Defs. Opp'n Pl. Mot. Strike 12-13, ECF No. 38.)

The motion to strike ScanSource's responses to interrogatories is denied. If certain interrogatories contain inadmissible evidence, the court can accord them their proper weight. Moreover, Yelton fails to show that these documents were not before the committee when it rendered its decision.

### 3. PowerPoint Presentation

Yelton moves to strike a PowerPoint presentation prepared by ScanSource's counsel of record in conjunction with hearings in the parallel state court litigation. Yelton argues that the presentation contains no admissible evidence and consists of unverified conclusions and false arguments. (Pl. Mot. Strike 8, ECF No. 27-1.) Yelton also argues that the presentation contains "arguments that Defendants have known to be false even before they were first made." (Id. at 10, ECF No. 27-1.) ScanSource argues that the presentation does contain admissible evidence and that all the disputed documents were provided to the plan committee for review. (Defs. Resp. Opp'n Mot. Strike 12-13, ECF No. 38.)

The motion to strike ScanSource's PowerPoint presentation is denied. To the extent the presentation does not contain admissible evidence, the court can accord it its proper weight. Moreover, there is no evidence that these documents were not before the committee when it rendered its decision. Finally, Yelton's argument that the presentation contains false allegations is relevant to the merits of the plan administrator's decision, not whether the documents were before the plan administrator at the time of the decision.

#### 4.  Letter to Special Referee

Yelton moves to strike a letter sent by ScanSource's counsel of record to a special referee in the parallel state litigation outlining why ScanSource believed it was entitled to a preliminary injunction in that litigation.  Yelton argues that the letter contains no evidence and includes only one-sided arguments and conclusions.  (Pl. Mot. Strike 8-9, ECF No. 27-1.)  Yelton also argues that the letter contains false statements.  (Id. at 11, ECF No. 27-1.)  ScanSource argues that the letter contains references to specific evidence, and that all disputed materials were provided to and considered by the plan committee.  (Defs. Resp. Opp'n Mot. Strike 12-13, ECF No. 38.)

The motion to strike ScanSource's letter to the special referee is denied.  To the extent the letter does not contain admissible evidence, the court can accord the evidence its proper weight.  Moreover, Yelton does not show that these documents were not before the committee when it rendered its decision.  Finally, Yelton's argument that the letter contains false statements is relevant to the merits of the plan administrator's decision, not whether the documents were before the plan administrator at the time of the decision.

#### 5. Preliminary Injunction

Yelton moves to strike a preliminary injunction entered by the special referee in the parallel state litigation.  Yelton argues that "a South Carolina preliminary injunction is not a finding and to admit it into evidence is per se highly prejudicial and an abuse of discretion."  (Pl. Mem. Supp. Mot. Strike 9 (citing Allegro, Inc. v. Scully, 733 S.E.2d 114, 121 (S.C. Ct. App. 2012)), ECF No. 27-1.)  ScanSource does not specifically address the preliminary injunction.  Instead, ScanSource asserts generally that the disputed documents contain evidence and that they

were all provided to the plan committee for review.  (Defs. Resp. Opp'n Pl. Mot. Strike 12-13, ECF No. 38.)

The motion to strike the preliminary injunction is denied.  In <u>Allegro</u>, the South Carolina Court of Appeals explained that a preliminary injunction is not a finding and admitting it into evidence is per se highly prejudicial and an abuse of discretion. 733 S.E.2d at 121.  However, the court was considering its admissibility before a jury, not a judge.  <u>See id.</u>  In the present case, the court is well-versed in the evidentiary limitations of a preliminary injunction, thus eliminating the concern about prejudice.  As a result, the court can afford the preliminary injunction its proper weight.  Finally, Yelton has not shown that the preliminary injunction was not submitted to the plan committee.

### B. Yelton's Motions to Strike
### Search Provider Queries and Docket Numbers 36-2 and 38-2[3]

Yelton moves to strike the laptop search provider queries on the ground that they were not submitted to the plan committee for review.  (Pl. Mem. Supp. Mot. Strike 8, ECF No. 27-1.) Yelton specifically notes that the document is dated May 2013, which is subsequent to the filing of this case and nearly nine months after the August 20 decision that he appealed.  (<u>Id.</u>) ScanSource submits that the document was submitted to the plan committee for review and notes that in the committee's July 15, 2013 letter denying Yelton's appeal, the committee specifically referenced the search provider queries.  (Defs. Mem. Opp'n Pl. Mot. Strike 13, ECF No. 38.)  ScanSource attached a copy of the July 15, 2013 letter to its response to Yelton's

---

[3]These two issues were raised in separate motions.  (Pl. Mem. Supp. Mot. Strike 8, ECF No. 27-1.); (Pl. Mot. Strike Docket Entries 1, ECF No. 42.)  However, the underlying issue is the same.  For convenience and clarity, the court addresses the two motions together.

motion to strike and to its memorandum in support of judgment. (Id. Ex. B (July 15, 2013

Letter), ECF No. 38-2.); (Defs. Mem. Supp. J. Ex. B (July 15, 2013 Letter), ECF No. 36-2.)

Thereafter, Yelton moved to strike docket numbers 36-2 and 38-2. (Pl. Mot. Strike Docket

Entries 1, ECF No. 42.) Yelton argues that the July 15, 2013 decision was made in violation of

ERISA's timing requirements, rendering the decision a "nullity," and that courts apply a de novo

standard of review where the administrator fails to issue a decision prior to litigation. (Pl. Mot.

Strike Docket Entries 1-2, ECF No. 42.) ScanSource acknowledges that the decision was issued

outside of the regulatory time limits but asserts that the Fourth Circuit's standard for ERISA

procedural violations means that "failure to technically comply with all of ERISA's procedural

requirements does not invalidate an otherwise sound denial of benefits." (Defs. Resp. Pl. Mot.

Strike Docket Entries 4, ECF No. 49.) Thus, whether the search provider queries are included in

the administrative record and whether the court should consider the July 15, 2013 letter in its

review turn on whether the plan committee's July 15 denial of benefits is a valid determination

for purposes of this litigation.

On March 19, 2012, Yelton inquired regarding the status of his deferred compensation

from ScanSource. (Pl. Mot. Strike Ex. 1 (March 19, 2012 Email Exchange), ECF No. 27-2.);

(Defs. Resp. Opp'n Pl. Mot. Strike Ex. 1 (March 19, 2012 Email Exchange), ECF No. 38-1.)

On August 20, 2012, ScanSource sent Yelton a letter denying him the vested match portion of

his deferred compensation. (Second Am. Joint Stip. Ex. 1, Stip. R. 1-2 (Aug. 20, 2012 Letter),

ECF No. 23-1.) On October 18, 2012, Yelton appealed the denial of his benefits. (Am. Joint

Stip. Ex. 34, Stip. R. 395-396 (Oct. 1 Letter), ECF No. 23-37.) Yelton instituted this litigation

by filing a complaint on April 22, 2013. (Compl., generally, ECF No. 1.) ScanSource denied

Yelton's appeal on July 15, 2013. (Defs. Mem. Supp. J. Ex. B (July 15, 2013 Letter), ECF No. 36-2.)

Pursuant to ERISA regulations, "the plan administrator shall notify a claimant . . . of the plan's benefit determination on review within a reasonable period of time, but not later than 60 days after receipt of the claimant's request for review by the plan" but "[i]f the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 60-day period." 29 C.F.R. § 2560.503–1(i)(1)(i) (2013). The regulations further provide that "[i]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) . . . ." 29 C.F.R. § 2560.503–1(l) (2013). The regulations clearly provide that a determination on review should take no longer than 60 days (or 120 days with notice to the claimant of special circumstances) and that a claimant is not required to wait for a final determination to be made in order to file a lawsuit. However, the regulations do not address the propriety nor the consequences of an administrator making a final determination subsequent to the claimant's filing suit.

Few cases have addressed analogous factual circumstances to this case. Those cases that have addressed these circumstances address the standard of review that should be applied to the benefits determination; the cases do not address whether information supplied to the committee following the claimant's filing of a case or whether a post-filing determination should be considered by the court on review. See LaAsmar v. Phelps Dodge Corp., 605 F.3d 789, 797-98

12

(10th Cir. 2010); Rasenack ex rel. Tribolet v. AIG Life Ins. Co., 585 F.3d 1311, 1315-16 (10th

Cir. 2009).  In the Fourth Circuit, courts apply a "substantial compliance" approach to determine

whether procedural violations of ERISA regulations result in an abuse of discretion.  See Ellis v.

Metro. Life Ins. Co., 126 F.3d 228, 235 (4th Cir. 1997), abrogated on other grounds by

Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353 (4th Cir. 2008).  As a result, "substantial

compliance with the spirit of [a] regulation will suffice, for '[n]ot all procedural defects will

invalidate a plan administrator's decision.'"  Id.  (quoting Brogan v. Holland, 105 F.3d 158, 165

(4th Cir. 1997)).  Moreover, in the Fourth Circuit, a violation of ERISA's procedural regulations

will not result in an abuse of discretion unless there is "'a causal connection between

[procedural defects] and the final denial of a claim.'"  Donnell v. Metro. Life Ins. Co., No. 04-

2340, 2006 WL 297314, at *5 (4th Cir. Feb. 8, 2006) (unpublished) (quoting Ellis, 126 F.3d at

238).  In Donnell, the plaintiff specifically raised the issue that the administrator had violated

ERISA's timing regulations in deciding her appeal, but because the plaintiff "asserted no such

link between [the administrator's] noncompliance with Section 2560.503-1 and the denial of her

claim," the court did not find an abuse of discretion.  Id.

        The motions to strike the laptop search provider queries and docket numbers 36-2 and

38-2 are denied.  The Fourth Circuit's reliance on a "causal connection between [procedural

defects] and the final denial of a claim" in order to find an abuse of discretion supports the

conclusion that a post-filing submission to the plan administrative committee should not be

automatically excluded from consideration by the court.  Admittedly, consideration of post-

filing documents could potentially allow an administrator to stack the administrative record with

documents that plaintiffs did not have the opportunity to contest or address.  However, any post-

filing stacking of the administrative record could be considered by the court on its review of the administrator's decision, thus providing an inherent check of the potential for such abuse.

Yelton cites several out-of-circuit cases for the proposition that an untimely decision is a "nullity" that should not be considered by the court. (Pl. Mot. Strike Docket Entries 2, ECF No. 42.) However, none of the case law cited by Yelton states that the July 15, 2013 determination or documents submitted to the committee after filing of litigation should not be before the court on its review of the benefits determination. First, plan administrators either issued no decision or were deemed to have denied appeals under then-existing ERISA regulations. See Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98, 109 (2d Cir. 2005) (applying de novo review of an administrator's decision where an untimely decision was "deemed denied" under previous ERISA regulation, resulting in no valid exercise of discretion); McDowell v. Standard Ins. Co., 555 F. Supp. 2d 1361, 1372-75 (N.D. Ga. 2008) (applying de novo review where no decision was made on an appeal). Additionally, in LaAsmar, although the court applied de novo review, the court appears to have reviewed the untimely decision de novo, not the initial decision. 605 F.3d at 800-13 (reviewing the administrator's three reasons for denying benefits); LaAsmar v. Phelps Dodge Corp., Civil Action No. 06-cv-00013-MSK-MJW, 2007 WL 1613255, at *2 (D. Colo. Jun. 1, 2007) (unpublished) (noting that the initial determination denied benefits for two reasons but that the determination on appeal denied benefits for three reasons). Further, in Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 971-72 (9th Cir. 2006), the Ninth Circuit explained that de novo review was appropriate "[w]hen an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan," but did not find that such a violation occurred. Further,

14

the <u>Abatie</u> court was not addressing ERISA timing regulations. <u>Id.</u> Moreover, in <u>Rasenack</u>, 585

F.3d at 1315-16, the Tenth Circuit reviewed a benefits determination <u>de novo</u> where the final

determination was made in violation of timing requirements and after commencement of

litigation. However, the court did not address whether the untimely decision was a nullity, and

the court considered the post-filing determination in its review of the administrator's decision.

<u>See Rasenack</u>, 585 F.3d at 1324 (discussing the contents of the administrator's denial of

claimant's appeal). Finally, in <u>Gritzer v. CBS, Inc.</u>, 275 F.3d 291, 295 n.4 (3d Cir. 2002), the

Third Circuit did say that "post-commencement-of-litigation determinations under the aegis of

attorneys are not benefit eligibility analyses by a plan administrator to which a court must defer."

However, in <u>Gritzer</u>, the plan administrator never made an initial determination on the

claimants' applications for benefits and "apparently never made any effort to analyze appellants'

claims much less to advise them of what that analysis disclosed until after [the] litigation was

filed." <u>Id.</u> at 295. In contrast, in the present case, ScanSource issued an initial denial on August

20, 2012. Further, as Yelton's own submissions to the plan administrator demonstrate,

ScanSource was actively reviewing Yelton's appeal prior to the commencement of the litigation.

(Second Am. Joint Stip. Ex. 34 (Oct. 18, 2012 Letter), ECF No. 23-37; Ex. 39 (Nov. 15, 2012

Email), ECF No. 23-43; Ex. 40a (Apr. 1, 2013 Letter), ECF No. 23-44.) None of the cases cited

by Yelton support the proposition that the July 15, 2013 determination is a nullity. To the extent

that the cases demonstrate that a different standard of review should apply, that issue is not

before the court and the court does not need to make that determination at this time.

Finally, <u>Eastman Kodak Co. v. STWB, Inc.</u>, 452 F.3d 215 (2d Cir. 2006), which Yelton

cites in support of his proposition that "[p]ost-exhaustion efforts to remedy a bad process simply

have no effect," is inapposite. (Pl. Mot. Strike Docket Entries 2, ECF No. 42.) In Eastman Kodak, after the initiation of litigation, the employer amended its claims procedure and argued that the plaintiff should be required to undergo its amended review process before the court could adjudicate plaintiff's claim. Id. at 221-22. The Second Circuit held that a claimant could not be required under ERISA regulations to undergo such post-litigation procedures because such a requirement would provide incentive to employers to avoid establishing review procedures until after a claimant filed a lawsuit. Id. at 222. In the present case, no such post-litigation procedures were required by amendment of the plan. Rather, the claims process was already ongoing–the plan administrator simply did not make its determination until after the litigation was filed.

Yelton also argues that docket numbers 36-2 and 38-2 should be struck because they were not part of the administrative record. (Pl. Mot. Strike Docket Entries 2, ECF No. 42.) ScanSource argues that because the letter was not before the committee when it made its decision, it was not required to be included in the administrative record and that no reason exists for why the court should not review the actual decision issued by the plan administrative committee. (Defs. Resp. Pl. Mot. Strike Docket Entries 4, ECF No. 49.) The court agrees. First, logically, in order to review an administrator's decision, the court must consider that decision and its contents. Further, as explained more fully in Section II.C, infra, under either de novo review or abuse of discretion review, the court has the authority to supplement the record. Thus, even if the decision were not part of the administrative record, the court would have the authority to consider it as a supplement to the administrative record. As a result, the motion to strike docket numbers 36-2 and 38-2 is denied.

16

### C.  Yelton's Motion to Supplement the Record

Yelton moves to supplement the administrative record with twelve additional

documents.  (Pl. Mem. Supp. Mot. Strike Exs. 1-12, ECF Nos. 27-1–27-13.)  Yelton argues that

under either de novo or abuse of discretion review, the court is permitted to supplement the

record under Fourth Circuit precedent.  (Pl. Mem. Supp. Mot. Strike 21-22, ECF No. 27-1.)

ScanSource argues that the abuse of discretion standard of review applies, and under this

standard courts traditionally limit the evidence to materials that were before the plan

administrative committee at the time of the decision.  (Defs. Opp'n Pl. Mot. Strike 14, ECF No.

38.)  As a result, ScanSource asserts that Yelton should not be permitted to supplement the

record with additional documents.  (Id.)

Courts review an ERISA plan administrator's decision either de novo or for an abuse of

discretion.  See, e.g., Helton v. AT&T, Inc., 709 F.3d 343, 351 (4th Cir. 2013) (outlining when

courts use the two standards).  When the district court reviews an administrator's decision

de novo, the court may "in its discretion . . . allow evidence that was not before the plan

administrator . . . . when circumstances clearly establish that additional evidence is necessary to

conduct an adequate *de novo* review of the benefit decision."  Quesinberry v. Life Ins. Co. of

North America, 987 F.2d 1017, 1025 (4th Cir. 1994).  "Generally, consideration of evidence

outside of the administrative record is inappropriate when a coverage determination is reviewed

for abuse of discretion."  Helton, 709 F.3d at 352 (citing Sheppard & Enoch Pratt Hosp., 32 F.3d

at 125).  However, in Helton, the Fourth Circuit recently clarified that "a district court may

consider evidence outside of the administrative record on abuse of discretion review in an

ERISA case when such evidence is necessary to adequately assess the [abuse of discretion]

17

factors and the evidence was known to the plan administrator when it rendered its benefits determination." Id. at 356. Thus, "an ERISA plan administrator can be charged with knowledge of information acquired by its employees in the scope of their employment and the contents of its books and records." Id.

Based on the foregoing, under either standard of review, the court may supplement the administrative record with extra-record evidence without deciding the applicable standard of review at this stage of the case. Because Yelton presents different arguments as to the relevance of each of the exhibits, each exhibit is addressed individually below.

**1. Exhibit 1-March 19, 2012 Email Exchange**

Exhibit 1 is an email exchange between Yelton's counsel and ScanSource's counsel regarding Yelton's inquiry to ScanSource regarding his deferred compensation benefits. (Pl. Mot. Strike Ex. 1 (March 19, 2012 Email Exchange), ECF No. 27-2.) In the email exchange, ScanSource's counsel states that ScanSource's position was that Yelton had forfeited the vested match portion of deferred compensation. (Id.) Yelton argues the court should supplement the record with this exhibit because it is relevant to a potential conflict of interest, showing that ScanSource had made its decision on Yelton's deferred compensation prior to any administrative review. (Pl. Mem. Supp. Mot. Strike 2-3, 24, ECF No. 27-1.); (Pl. Reply Supp. 8, ECF No. 48.) ScanSource does not argue against the email's inclusion specifically. ScanSource relies on its argument that the court is limited to the administrative record on abuse of discretion review. (Defs. Resp. Opp'n Pl. Mot. Strike 14, ECF No. 38.) ScanSource also asserts that "no additional evidence is necessary in order for the [c]ourt to assess the [abuse of discretion] factors" because "the administrative record in this case consists of over 1,200 pages

18

of evidence." (Id. at 15, ECF No. 38.)  Further, Yelton "was given the opportunity to submit

documents to the [plan administrative committee] to be considered in connection with his claim,

and [Yelton] did so on three different occasions."  (Id.)

Yelton's motion to supplement the administrative record with Exhibit 1 is granted.  The

email exchange is relevant to whether there was a conflict of interest, which is one of the abuse

of discretion factors, Booth v. Wal-Mart Stores, Inc. Associates Health and Welfare Plan, 201

F.3d 335, 342 (4th Cir. 2000), and a factor that the Fourth Circuit has said warrants

consideration of extra-record information under de novo review, Quesinberry, 987 F.2d at 1025.

Moreover, whether ScanSource pre-determined the outcome of the claim prior to any

administrative review is relevant to whether Yelton received the full and fair review required by

ERISA.  Defendants' reliance on the general view that abuse of discretion review should be

limited to the administrative record does not adequately account for the Fourth Circuit's recent

holding in Helton.

## 2. Exhibit 2-Hearing Transcript

Yelton seeks to supplement the record with excerpts from a transcript of a hearing in the

parallel state litigation about whether Yelton's counsel will be allowed to depose ScanSource's

in-house counsel, John Ellsworth.  (Pl. Mot. Strike Ex. 2 (Mar. 4, 2013 Hr'g Tr.), ECF No. 27-

3.)  Yelton argues that the transcript "show[s] that John Ellsworth, who issued the only pre-

litigation decision, was a fact witness and participant in" the parallel state litigation.  (Pl. Reply

Defs. Opp'n Mot. Strike 8, ECF No. 48.)  ScanSource does not directly address whether the

transcript should supplement the record.  ScanSource relies on the traditional view that the court

should limit itself to the contents of the administrative record on abuse of discretion review and

argues that additional information would not aid in the evaluation of the abuse of discretion

factors.  (Defs. Resp. Opp'n Pl. Mot. Strike 14-15, ECF No. 38.)

The motion to supplement the administrative record with the trial transcript is denied.

Yelton has not shown how the transcript would aid the court in its review of the administrator's

decision.

### 3. Exhibit 3-Deposition Transcript

Yelton seeks to supplement the record with excerpts from a transcript of a deposition of

Richard Cleys, CEO of ScanSource, Inc.  (Pl. Mot. Strike Ex. 3 (Cleys Dep.), ECF No. 27-4.)

Yelton argues that the testimony is relevant to show that the plan administrative committee,

which is charged with making benefits determinations, did not make the initial benefits

determination that preceded this litigation.  (Pl. Mem. Supp. Mot. Strike 3, ECF No. 27-1.); (Pl.

Reply Defs. Opp'n Mot. Strike 9, ECF No. 48.)  ScanSource does not directly address whether

the transcript should supplement the record, relying solely on its argument that on abuse of

discretion review the court's review is limited to the contents of the administrative record and

that additional information would not aid in the evaluation of the abuse of discretion factors.

(Defs. Resp. Opp'n Pl. Mot. Strike 14, ECF No. 38.)

The motion to supplement the administrative record with the deposition transcript is

granted.  The deposition testimony explains that the board of directors made initial benefits

determinations, not the plan administrative committee.  A decision by a company's board of

directors is a conflict of interest, which, as noted above, is one of the factors on abuse of

discretion review and a factor the Fourth Circuit has said warrants consideration of extra-record

20

materials.  This testimony is relevant to that conflict of interest and aids the court in its review of the benefits determination.

### 4. Exhibits 4, 5, 6, 7, 8, 9, 10, and 11-Email Exchanges Among Counsel

Yelton seeks to supplement the record with copies of email exchanges between Yelton's counsel and ScanSource's counsel regarding the contents of the joint stipulation and the confusion surrounding the contents of the administrative record.  (Pl. Mot. Strike Exs. 4-11, ECF Nos. 27-5–27-12.)  Yelton argues that these emails show that documents were intentionally added to the administrative record and that Yelton objected to the disputed portions of the record being included as parts of the stipulated record.  (Pl. Mem. Supp. Mot. Strike 5-8, ECF No. 27-1.); (Pl. Reply Defs. Opp'n Mot. Strike 9-10, ECF No. 48.)  ScanSource does not directly address whether the emails should supplement the record, relying solely on its argument that on abuse of discretion review the court is limited to the contents of the administrative record and that additional information would not aid in the evaluation of the abuse of discretion factors. (Defs. Resp. Opp'n Pl. Mot. Strike 14, ECF No. 38.)

The motion to supplement the administrative record with the emails is denied.  The emails do not aid the court in its review of the administrator's benefits determination.  Yelton does not show how they are relevant to any of the abuse of discretion factors or that they are necessary for any adequate de novo review.  Moreover, as explained previously, the court is aware of the dispute over the contents of the administrative record and Yelton has not been prejudiced by the previous erroneous filings.

### 5. Exhibit 12-Deposition of Amy Pharr

Yelton seeks to supplement the record with excerpts of deposition testimony of Amy

Pharr.  (Pl. Mot. Strike Ex. 12 (Pharr Dep.), ECF No. 27-13.)  The testimony discusses whether

she had knowledge of Yelton's use of DropBox, knowledge of the contents of Yelton's

DropBox folder, knowledge of whether Yelton was in possession of any of ScanSource's

confidential information, knowledge of the contents of Yelton's office, knowledge of any hard

drives Yelton may have taken with him when his employment with ScanSource ended,

knowledge of any breach of contract by Yelton, and knowledge of any intent by Yelton to use

ScanSource's information.  (Pl. Mot. Strike Ex. 12 (Pharr Dep., generally), ECF No. 27-13.)

Yelton argues that the testimony contradicts verified pleadings from the state litigation that were

provided to the plan administrative committee.  (Pl. Reply Defs. Opp'n Mot. Strike 10, ECF No.

48.)  ScanSource does not directly address whether the deposition testimony should supplement

the record.  (Defs. Resp. Opp'n Pl. Mot. Strike 14, ECF No. 38.)

The motion to supplement the administrative record with the deposition testimony is

granted.  The testimony conflicts with the verified answer and counterclaims, which were

submitted to the plan administrator, and Amy Pharr signed an affidavit verifying the answer and

counterclaims.  Pharr is a ScanSource employee, and under Helton, the committee is charged

with knowledge Pharr obtained in the course of her employment.  Moreover, the testimony

would aid the court in its review of ScanSource's benefits determination.

**6. Request to Provide Responsive Documents**

Yelton asks the court for permission to provide responsive materials to the disputed portions of the administrative record that the court does not strike.  (Pl. Mem. Supp. Mot. Strike 25, ECF No. 27-1.)  Yelton argues that if he had been made aware of the documents during the administrative review process, he would have provided the documentation at that time.  (Id.) Yelton cites no case law in support of this specific request, and the motion to supplement the administrative record with responsive materials is denied.  Yelton's request is ambiguous, and the court has no way of evaluating whether those materials would be permitted to supplement the record under the standards for extra-record evidence in Quesinberry or Helton.

**D. Yelton's Motion for Discovery**

Yelton moves for discovery into whether the committee provided any review of Yelton's claim for benefits.  (Pl. Mot. Strike 25-26, ECF No. 27-1.)  Yelton argues that after Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105 (2008), "discovery is necessary where, as here, there is a structural conflict to enable the plaintiff to establish that it had an effect on the administrative determination."  (Pl. Mem. Supp. Mot. Strike 25, ECF No. 27-1.)  Yelton specifically asks the court to direct ScanSource to respond to requests for information that Yelton submitted in his appeal of the August 20, 2012 denial of benefits.  (Id. at 26, ECF No. 27-1.)  Yelton then asks the court for permission to conduct written discovery and depositions based on the information he receives.  (Id.)  ScanSource argues that discovery is generally not available in ERISA cases that review an administrator's decision for abuse of discretion.  (Defs. Opp'n Pl. Mot. Strike 15-16, ECF No. 38.)  Moreover, ScanSource contends that "[d]iscovery would serve no useful purpose in this case and would only serve to delay the case and

undermine the appropriate review process of the [the plan administrative committee's] decision."  (Id. at 16, ECF No. 38.)

In Glenn, 554 U.S. at 112, the Supreme Court held that "the fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates the kind of 'conflict of interest'" that courts must weight as a factor in reviewing a benefits determination.  The Court also held that the presence of such a conflict of interest does not change the standard of review of a discretionary benefit determination.  Id. at 115-16.  Rather, the presence of such a conflict should be a single factor considered by the court on abuse of discretion review.  Id. at 116-17. In explaining how lower courts should apply this approach, the Court stated:

> The conflict of interest here . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including but not limited to, cases where an insurance company administrator has a history of biased claims administration.  It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

Id. at 117-18 (internal citations omitted).

Whether discovery is available under abuse of discretion review in light of Glenn has not been conclusively decided by the Fourth Circuit.  See Clark v. Unum Life Ins. Co. of Am., 799 F. Supp. 2d 527, 532 (D. Md. 2011).  However, "[t]hose circuits that have reached the issue have held that Glenn necessarily contemplated discovery beyond the administrative record if courts are to properly determine the likelihood that an administrator's conflict of interest influenced its decision in a given case."  Id. (citations omitted).  Further, "[c]ertain of [the Fourth Circuit's] post-Glenn cases . . . appear to acknowledge the relevance of extra-record

evidence in determining the significance of a conflict [of interest]." <u>Clark</u>, 799 F. Supp. 2d at

532 (D. Md. 2011) (citations omitted). Moreover, "*Glenn* unambiguously requires district

courts to determine the likelihood that an administrator's conflict of interest affected its benefits

decision . . . ." <u>Id.</u> As a result, "[u]nless such information happens to appear in the

administrative record, the only way for a court to carry out *Glenn*'s directive may be to allow the

Plaintiff to obtain information through discovery." <u>Id.</u> However, "[c]onflict-oriented discovery

will be needed only to the extent that there are gaps in the administrative record." <u>Patel v.</u>

<u>United of Omaha Life Ins. Co</u>, No. DKC 12-0880, 2012 WL 2370129, at *2 (D. Md. Jun. 21,

2012) (unpublished) (quoting <u>Denmark v. Liberty Life Assur. Co. of Boston</u>, 556 F.3d 1, 10 (1st

Cir. 2009)). Thus, discovery is available under abuse of discretion review to the extent

necessary to fill in gaps in the administrative record necessary for a court to determine the

impact of a conflict of interest in a benefits determination.

Discovery is available under de novo review. The Fourth Circuit has explained "that

courts conducting *de novo* review of ERISA benefits claims should review only the evidentiary

record that was presented to the plan administrator or trustee except where the district court

finds that additional evidence is necessary for resolution of the benefit claim." <u>Quesinberry</u>, 987

F.2d at 1026-27.

Yelton's motion for discovery is granted in part. ScanSource never replied to Yelton's

request for information, and some of that information may be relevant to whether a potential

conflict of interest affected the benefits determination. As Yelton notes in his reply, the

administrative record contains no evidence of plan administrator meetings that ScanSource

alleges occurred. (Pl. Reply Supp. Mot. Strike 2, 13, ECF No. 48.) As a result, the court finds

that limited discovery to address gaps in the administrative record relevant to the potential

conflict of interest is appropriate in this case.  The parties have forty-five days to conduct written

discovery on the following limited topics:  the composition of the board of directors that denied

the initial benefits determination, the composition of the members of the plan administrative

committee who denied the appeal, meetings of the plan administrative committee that took place

in deciding Yelton's appeal, and how the deferred compensation benefits fund is funded.[4]  At the

close of the forty-five day period, the parties will have fifteen days to file motions to supplement

the administrative record.  Within five days of disposition of the motions to supplement the

administrative record, the parties are required to file an amended administrative record

consisting of the original administrative record, the materials the court has ordered that it will

consider in the administrative record in this order, and any supplementary materials agreed to at

the close of discovery.  Once the parties have filed the complete administrative record, the

parties will have fifteen days to file memoranda in support of judgment.[5]

### E. Yelton's Motion for Leave to Submit Documents In Camera

Yelton moves to submit certain documents for in camera review by the court.  (Pl. Mot.

Leave Submit Docs. 1, ECF No. 45.)  Yelton argues these documents will show that

ScanSource's counsel knew that allegations contained in a PowerPoint presentation and letter to

---

[4]To the extent that Yelton seeks discovery on all communications regarding Yelton's benefits determination, the court denies the motion because the scope of such discovery is overly broad.

[5]Because the court grants Yelton's motion for discovery and orders that new memoranda in support of judgment be filed following the filing of a complete administrative record, Yelton's motion for reconsideration of an extension of the deadline to file memoranda in support of judgment is moot.

26

the special referee in the parallel state litigation were false at the time they were made.  (Id. at 2, ECF No. 45.)  Although ScanSource has consented to the motion, (Defs. Resp. Pl. Mot. Leave Submit Docs. 1, ECF No. 51.), the truth or falsity of the allegations is not relevant to whether the documents were before the plan administrator at the time it made its decision.  As a result, the documents would not aid the court in deciding the motion to strike, and the motion for leave to submit documents in camera is denied.

### F. ScanSource's Motion to Supplement the Administrative Record

ScanSource moves to supplement the administrative record with the July 15, 2013 letter denying Yelton's claim for benefits.  (Defs. Mot. Supp. 1, ECF No. 52.)  ScanSource argues that it "did not include [the letter] in the administrative record filed with the [c]ourt because [the letter] was not *before* the [plan administrator] at the time it made its decision."  (Id.)  Yelton argues that "[t]he notion that Defendants did not think that a purported final decision to be reviewed needed to be in the administrative record for review does not pass the straight face test."  (Pl. Opp'n Defs. Mot. Supp. 1, ECF No. 53.)  The court disagrees.  For the reasons outlined in Section II.B, supra, the July 15, 2013 denial is a determination by the plan administrator that may be considered by the court.  As a result, ScanSource's motion to supplement the administrative record is granted.

It is therefore

**ORDERED** that Yelton's motion to strike disputed portions of the administrative record, to supplement the administrative record, and for discovery, docket number 27, is granted in part and denied in part.  It is further

**ORDERED** that Yelton's motion for reconsideration, docket number 28, is denied as moot.  It is further

**ORDERED** that Yelton's motion to strike docket numbers 36-2 and 38-2, docket number 42, is denied.  It is further

**ORDERED** that Yelton's motion for leave to submit documents in camera, docket number 45, is denied.  It is further

**ORDERED** that ScanSource's motion to supplement the administrative record, docket number 52, is granted.

**IT IS SO ORDERED.**


                                        s/Henry M. Herlong, Jr.
                                        Senior United States District Judge


Greenville, South Carolina
November 18, 2013